IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**JAN 1 4 2005**

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

STEPHANIE BROCKMAN CRUTCHFIELD
and SANDRA PHILLIPS & FRANK PHILLIPS as
Natural Guardians and Next of Kin and on Behalf of
JEFFREY PHILLIPS, a Minor                                      PLAINTIFFS

V.                              NO. 4:02cv0074 GH

DILLARD'S, INC.                                               DEFENDANT

---

# PLAINTIFFS' MOTION TO COMPEL

---

COMES NOW, Plaintiff by and through her counsels, Mays, Byrd & Associates, P.A., Cletus

P. Ernster III, P.A. and Sweet & Freese, and states that Plaintiff in the above-numbered and entitled

cause, and files this  Motion to Compel more complete Discovery Responses from Defendant

DILLARD'S, INC., and would respectfully show this Honorable Court as follows:

### A.

### BACKGROUND

1.      In this civil rights action, your Plaintiffs seek redress for unlawful race discrimination

at Dillard's.  Your Plaintiffs are victims of systemic race discrimination and racial profiling

occurring nationally at Dillard's.

2.      Dillard's is no stranger to allegations of racial discrimination and racial profiling.

(See Exhibit 1, *Paula Darlene Hampton, et al. vs. Dillard's Department Stores*, 247 F.3d 1091 (10th

Cir. 2002;  Exhibit 2,  List of Dillard's Related News Articles.)   The Little Rock, Arkansas based

-1-

company long ago institutionalized a corporate-wide policy of using off-duty law enforcement officers where allowed by law for store security. Supervised by store management with no security training, the officers rely on themselves or on information provided to them by company sales associates and employees (who lack adequate training) to question, apprehend and detain shoppers who are mostly people of color.

3.      Stephanie Crutchfield is a Dillard's victim. She did not steal anything from Dillard's. She did not do anything wrong at Dillard's. Yet, she was stopped, detained, taken to a room, pushed up against a wall, questioned and verbally abused at the Dillard's Park Plaza store in Little Rock on February 12, 1999. Dillard's attempts to obfuscate the real issues by mislabeling this incident a "shoplifting turned robbery" ignores the fact that Stephanie had nothing to do with any shoplifting or robbery. Put simply, Stephanie was guilty of one thing at Dillard's–shopping while Black.

4.      Given Dillard's industry unique use of off-duty law enforcement officers as store security, the company's own early admission that company personnel did not follow Dillard's (inadequate) security policies, the long term, continued occurrence of significant customer discrimination litigation, the company's attempt to gather up and destroy internal security records Dillard's admits could show racial targeting, the company's long term awareness of security policy shortcomings, the company's strict compliance to putting untrained managers in charge of security, the company's lack of an experienced, trained and certified loss prevention director or department or security department and director, the information requested by your Plaintiff is relevant and discoverable.

**B.**

## NATURE OF DOCUMENT REQUESTS

5.      Plaintiffs' document requests and interrogatory requests made the basis of this Motion to Compel pertain to basically four (4) categories of discoverable information: (1) security-related documents concerning policies, procedures, detentions, incident records, records indicating race and record retention; (2) information indicating the ethnicity of customers shopping at the Dillard's stores where Plaintiffs' incidents occurred; (3) personnel and training; and (4) potential witnesses with knowledge of relevant facts. In the case *Mary Frazier, et al. v. Dillard's, Inc., et al.;* No. A-166912, 136th District Court of Jefferson County, Texas, Dillard's (under order from the Court) produced some records pertaining to category one (1), but the records produced are subject to a protective order. The documents exist and have been produced before in another case. Dillard's is unwilling to agree to production of those documents in this case, and Plaintiffs need these internal business records to show evidence of racial discrimination and profiling. Instead, Dillard's objects generally to all Plaintiff's discovery and elected to produce a very limited amount of responsive information.

**C.**

## ___ TRIAL SETTING

6.      Trial is set for February 22, 2005. Dillard's responded to discovery on or about December 10, 2004, and Dillard's now has a Motion for Summary Judgment before the Court, the response to which was due on January 7, 2005. Your Plaintiffs have requested depositions of witnesses designated by Dillard's, but have not received deposition dates, and Plaintiffs attempted to work with Defendant on these discovery issues but were unsuccessful.

## D.

## **DEFENDANT'S PRIVILEGE OBJECTIONS**

7.      Defendant did not tender a privilege log in this case, and Defendant asserts privilege

objections to every Request for Production identified in this motion except the very last request

where Defendant provided no objections or response.

## E.

## **DOCUMENTS REQUESTED**

8.      Plaintiffs are respectfully requesting that the Court overrule Defendant's objections

to the discovery made the basis of this Motion to Compel and order the Defendant to produce the

documents.

## **REQUESTS FOR PRODUCTION NO. 16**

16.  Please produce full and complete copies of correspondence, memoranda, and written
instructions drafted or authored by James Darr, Jr. and/or officers and directors of Defendant
identifying or discussing procedures and/or rules pertaining to investigation, detection,
apprehension, detention, photographing, arrest and/or prosecution of suspected shoplifters.

> RESPONSE: Defendant objects to this request for production on the grounds that it is overly
> broad, irrelevant based on the acts of this case, and not calculated to lead to admissible
> evidence.

9.      Regarding Request 16, Deputy Stacey Payton, an off-duty officer working for

Dillard's at the time of Stephanie Crutchfield's incident, admitted to her supervisor, lead officer Lt.

John Garza, that she stopped and detained Stephanie at Dillard's. (See, Exhibit 23, Deposition of

John Garza, p. 33). Stephanie had not stolen anything, had done nothing wrong and no stolen

merchandise was found.

10.     As early as September 1992, then Dillard's General Counsel, James Darr, circulated to all Directors and Nanette Savage, as well as Division Management, an e-mail titled "Security Employee Guidelines," admonishing security employees to read, or re-read, the security guidelines as a result of security stops that were not in compliance with company guidelines. (See, Exhibit 12, James Darr Security Memo).  Darr's memo followed a similar memo he sent out in July 1990.  (See, Exhibit 11, James Darr Memo).  Bad stops continued to plague the company in the years to follow, resulting in substantial civil rights violation litigation, media coverage and publicly-voiced concerns. See, *Mitchell v. Dillard Department Stores, Inc..*, 197 Ariz. 209, 3 P.3d 1129 (Az. Ct. App. 2000). *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2002), as well as Exhibits 2, 13, 14, 15, and 16.

11.     Your Plaintiffs are requesting memoranda, written instructions, and correspondence discussing the very training issues that sparked corporate concern as early as 1990 and remains problematic to this day.  Dillard's provided no responsive information whatsoever, leaving your Plaintiffs to locate what they could on their own.

12.     As such, your Plaintiffs respectfully request that this Honorable Court overrule Defendant's objections and order Defendant to fully and completely respond without objection.

## REQUESTS FOR PRODUCTION NO. 17

17. Please produce full and complete copies of non-privileged documents evidencing and explaining any decision by Defendant or Defendant's risk management personnel or ownership to discontinue use of a retail security force in favor of employing off-duty uniformed police officers, constables or sheriff's deputies.

> RESPONSE: Defendant objects to this request for production on the grounds that it is overly broad, irrelevant based on the facts of this case, and not calculated to lead to admissible evidence.

13.     Regarding Request 17, Defendant decided to use off-duty law enforcement as store security, a practice not followed by retailers like Eddie Bauer, to, as a former security employee states, shield itself from potential civil liability as a result of incidents like the incidents in this case. (See, Exhibit 15, News Article; Exhibit 17, Charles Conley Affidavit). Dillard's is using the off-duty law enforcement as a defense in this case.

14.     However, Defendant failed to produce any information responsive to this request, deciding instead to object to this request that pertains to the basis and explanation for a decision that bears directly upon what happened in this case.  Once again, Plaintiffs are left to try and find this information on their own.

15.     Accordingly, your Plaintiffs respectfully request that this Honorable Court overrule Defendant's objections and order Defendant to respond fully and completely without objection.

### REQUESTS FOR PRODUCTION NOS. 18-19

18. For the years 1990 - present, please produce full and complete copies of pass-on logs, security logs, security files, non-arrest records, incident reports, loss prevention reports, officer notebooks, pass-on books, daily activity reports, witness narratives, banning notices, trespass warnings, customer photographs, post orders and special orders for each Dillard location where each Plaintiff alleges his/her incident occurred.

RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

19. For the years 1990 - present, please produce full and complete copies of pass-on logs, security logs, security files, non-arrest records, incident reports, loss prevention reports, officer notebooks, pass-on books, daily activity reports, witness narratives, banning notices, trespass warnings, customer photographs, post orders and special orders  for each Dillard's store nationwide.

RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create

a cause of action where none exists.

16.     Regarding Requests Nos. 18 and 19:  National race-based mistreatment of Dillard's customers, including your Plaintiffs, is a central allegation in this case.  In order for Plaintiffs to prove that race was a motivating factor, constituted an unreasonable basis for detention and to support a punitive damage claim, as well as a corporate pattern and practice of treating blacks differently than whites, your Plaintiffs must have the discovery responsive to these two (2) document requests, including the security files Defendant already produced in the *Frazier* case noted above.

17.     According to Debbie Dynek, a Dillard's employee in the company's legal department who was involved in gathering the security files, these files are **Dillard's business records** and the security files contain pass-on logs, officer notebooks, incident reports, loss prevention reports, daily activity reports, banning notices, trespass warnings, customer photographs and non-arrest record books.  (See Exhibit 8, pp. 68-70, Deposition of Debbie Dynek).

18.     The **documents requested identify victims by race**, chronicling Dillard's security practices in detail.  Indeed, Dillard's own internal records are evidence of disparate treatment for non-whites that support allegations of racial profiling, racial discrimination and violations of Shopkeeper Privileges.

19.     According to deposition testimony from two (2) officers designated by Dillard's in this case, Dillard's security guard Tom Osborn kept lists (statistics) on paper and in a Dillard's Microsoft Excel Program identifying the race and gender of store visitors involved in incidents and arrests at Dillard's.  (See, Exhibit 23, Deposition of John Garza, pp. 23-25, 34; Exhibit 24, Deposition of Tom Osborn, pp. 38-41).  Tom Osborn provided a disc of this information to Dillard's security officer, Deputy Randall Tomboli.  (See, Exhibit 24, Deposition of Tom Osborn, pp. 43-47).

These statistics are similar to lists kept by Dillard's security at McCain Mall. (*Id.*, p. 41).   In

addition, officer Osborn put together himself albums of photographs pertaining to Dillard's store

visitors. (*Id.*. Pp. 62-64).  The information was prepared "on Dillard's dollars," Dillard's is aware

of the information and "Dillard's can look at it if they want." (See, Exhibit 23, Deposition of John

Garza, pp. 23, 35).

20.     Importantly, both officer Osborn and Officer Payton agree that more blacks than

whites get arrested at Dillard's.  (See, Exhibit 24, Deposition of Tom Osborn, p. 49; Exhibit 25,

Deposition of Stacey Payton, p. 49).

21.     Internal Dillard's memoranda dated March 31, 1998 and May 1, 2000 authored by

Dillard's Corporate Representative and General Counsel, Paul Schroeder, detail the company's

admission regarding these records, stating, in part, as follows:

*Such reports could be interpreted by some shoppers as attempts to "target" them.*

(See Exhibit 3, p. 2, paragraph 4, Schroeder Memo; Exhibit 4, p. 1, paragraph 1, Schroeder Memo).

As Paul Schroeder testified, targeting means "identifying a person based on their race." (See Exhibit

5, p. 176, Paul Schroeder Deposition).   According to Paul Schroeder, he issued the memoranda

because of his concern that Dillard's personnel were describing people in a way that customers could

feel they were in fact being targeted. (*Id.*).

22.     Consequently, General Counsel drafted the memoranda intending to gather all of

these security records at one central location–namely, his Little Rock, Arkansas office. (See Exhibit

5, p. 180, Deposition of Paul Schroeder).   To be clear, the memos outlined as follows:

Corporate Legal needs to become the official repository of all incident reports, log
books (or whatever they may be called) which are currently on file in the stores.  The
stores should send to Nanette Savage <u>ALL</u> originals and <u>ALL</u> copies they may have.

The stores should not retain any old incident reports or log books on premises.

(See Exhibit 3, p. 2, paragraph (c)(1), Schroeder Memo; Exhibit 4, p. 2, paragraph 4, Schroeder Memo).  Further, the memos admonished stores to limit customer photographing "to persons who have been notified in writing that they have been banned or trespassed."  (See Exhibit 3, p. 1, paragraph (3)(a), Schroeder Memo; Exhibit 4, p. 2, paragraph 3, Schroeder Memo).

23.    An e-mail transmission dated July 14, 2001 concerning an internal record audit elaborated, stating as follows:

> All unauthorized forms or notebooks containing narrative information of non-arrest activity *must be destroyed.*

(See Exhibit 6, Audit Report 907).  The following information contained in the report again highlights the company's fears about their own documents:

> During an inspection of the store, the Operations Manager and I found a notebook in the security office which contained unauthorized records of non-arrest activity.  This notebook's entries, which began on 1/20/01, included numerous descriptions of suspicious shoppers.  Many of these narratives offered lengthy descriptions of the activity witnessed and the individuals sex and race.

(*Id.*).

24.    A store manager for the Tyler Dillard's, Tim Knight, recalls attending semi-annual meetings in Phoenix and/or Fort Worth chaired by Gat Lemoine or Gene Baker where he was informed possibly by Paul Schroeder that stores were not to document ethnicity in the tracking of customers whether or not the customer was regarded as suspicious.  (See Exhibit 9, pp. 21-27, Tim Knight Deposition).

25.    While Dillard's denies destroying any of these types of records, a District Court Judge in Beaumont, Texas entered an order on December 10, 2002 ordering Dillard's not to destroy their

security records (See Exhibit 7, Court Order). The same Court also ordered Dillard's to produce the records the company received in Little Rock, Arkansas pursuant to these memos for the states of Texas and Louisiana. As such, Dillard's already produced security records Dillard's the **company** claimed it received for Texas and Louisiana stores, but Dillard's will not produce the same records in this case and Dillard's will not produce its Arkansas security files in this case for even the store(s) in question.

26.      Dillard's does not deny that the records requested were gathered together in one central location, and Dillard's cannot deny there is no burden in producing in this case that which has already been produced in another case. Security files produced in *Frazier* without being subject to a protective order show, for example, that over 80 percent of the customers banned from the Beaumont, Texas store were minority customers, most of whom were black.

27.      By its own admission, Dillard's acknowledges in its memos that these security records may show targeting of customers, allegations of which have been exposed extensively by "60 Minutes" and "20/20." There is no burden in producing these documents again, and your Plaintiffs need these records in order to show that Defendant targeted your Plaintiffs. Further, the bases for interrogations, stops and detentions are germane to claims asserted by your Plaintiffs, in that Dillard's was obliged by law (The Shopkeeper's Privilege) to act in good faith and upon a reasonable suspicion when detaining customers like your Plaintiffs. Moreover, your Plaintiffs need the requested (previously produced) information to demonstrate that Dillard's pattern, practice, habit, motive and intent, as well as negligence in hiring, training, and supervising company personnel, created an atmosphere ripe for abuse and profiling of minorities. Last, Dillard's conduct as evidenced in these records supports Plaintiffs' punitive damage claims.

28.     Importantly, circumstantial evidence of racial profiling in the form of incident reports or security files were used at trial in the case, *Hampton v. Dillard's Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2002), *cert. den'd*, that blacks were "tracked," singled out as suspicious and treated differently than whites.

29.     Accordingly, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to immediately produce these records.

## REQUEST FOR PRODUCTION NO. 22

22.  Please produce the **entire personnel file** for the employee named or person who each Plaintiff identified in Plaintiff's Complaint and/or discovery responses as a Dillard employee who accused Plaintiff of stealing or trying to steal merchandise and/or wrongfully detained, assaulted and/or arrested each Plaintiff.

>       RESPONSE: Defendant objects to this request for production on the grounds that Defendant is unaware of any employee of Defendant who accused Plaintiff of stealing or trying to steal merchandise and/or wrongfully detained Plaintiff, assaulted and/or arrested Plaintiff..

30.     Regarding Request No. 22: Dillard's witnesses identified as witnesses who may have knowledge relevant to the incident made the basis of this lawsuit include the following Dillard's designated witnesses: **Sgt. John Garza, Officer Tom Osbourne, and Officer Stacy Payton.**

31.     Dillard's already produced the personnel files for other Dillard's employees involved as witnesses in other cases, but Dillard's has not produced the personnel files for its designated witnesses in this case.

32.     Personnel files identify who pays the witness, employment status, training allegedly given to the witness, and performance reviews. Personnel records are kept at the store where these witnesses worked.

33.     Training (and lack thereof), performance reviews, employment status and payroll issues are central to claims asserted by your Plaintiffs and defenses relied upon by Defendant.

34.     Accordingly, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to immediately produce the personnel files for the following Dillard's designated witnesses: **Sgt. John Garza, Officer Tom Osbourne, and Officer Stacy Payton.**

## REQUEST FOR PRODUCTION NO. 34

34. Please produce full and complete copies of demographic studies, summaries, surveys and/or reports generated, purchased, reviewed, subsidized, authored or co-authored by Defendant, including Defendant's officers, directors, employees and agents, identifying the physical appearance, typical or preferred clothing, conduct, ethnicity or profile of potential or suspected shoplifters **and/or customers.**

RESPONSE: Defendant objects to this request for production on the grounds that it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence. Additionally, the Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

35.     Regarding Request 34: While Defendant may contend correctly that Defendant does not have possession, custody or control of responsive information pertaining to shoplifters, the request asks about **customer** demographic information as well and Defendant objects to the entire request without providing any responsive information.

36.     Circumstantial evidence of racial discrimination or profiling can be used to show mistreatment on the basis of race in this case. See, *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2002).

37.     Your Plaintiffs are entitled (and must) rely upon indirect, circumstantial evidence of racial discrimination to support allegations of discrimination, racial profiling and unreasonable

detention.  That this information at least exists in part is supported by Dillard's current General

Counsel, Paul Schroeder.

38.    Importantly, Paul Schroeder references in a document called "Dillard's Fact Sheet"

(found by Plaintiffs) what Paul Schroeder calls "recognized shopping center statistics" which

estimated the number of minority visitors to Dillard's.  (See, Exhibit 22, pp. 7-9 , Paul Schroeder

Deposition; Exhibit 13).  Paul Schroeder provided this to Adam Fifefield at the magazine, *Good*

*Housekeeping,* when Adam Fifefield was doing an article on consumer racial profiling.

39.    It is this type of statistical data that Plaintiffs can use to compare the ethnic ratio

of stops to the ethnicity of store visitors and demonstrate statistically disparate treatment of

minorities at Dillard's.  Consequently, your Plaintiffs respectfully request that this Honorable

Court overrule Defendant's objections and order Defendant to respond fully and completely

without objections.

## REQUEST FOR PRODUCTION NO. 35

35. Please produce full and complete copies, including attachments and exhibits of each audit report, audit log, study, survey, **electronic mail transmission**, correspondence, memoranda and/or written instruction pertaining to record keeping and/or retention policies and procedures.

> RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence.  Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

40.    Regarding Request No. 35: Your Plaintiffs already obtained (on their own) the two

General Counsel memoranda discussed above and the Audit Report 907 quoted above.  E-mail

transmissions, written instructions and memoranda pertaining to these document destruction and

document gathering memos and e-mails are discoverable and reasonably calculated to lead to the

discovery of additional admissible evidence, in that the data will shed light upon the company's attempt to gather up all records that may, by the company's own admission, show targeting of Dillard's customers on the basis of race.  Further, the information may show that Dillard's destroyed or attempted to destroy this crucial information.

These three (3) documents in question show clearly who received these documents:

District Managers            Bob McGushin
Stores Managers             Sid Sanders
Gene Baker                  David Shiroda
Burt Squires                Jody Styles
Gat Lamoine                 Chris Kuspert
Nanette Savage

41.    Consequently, a clear documented list exists from which the additional documents, if any, can be tracked, located and produced.

42.    With respect to e-mail transmissions pertaining to these records, metadata recorded by Dillard's computer system to assist computer users in retrieving the information at a later date can be used by Defendant to secure the responsive information for production.  Since organizations like Dillard's must take reasonable steps to communicate to affected persons (like those specifically identified above) the need for and scope of preserving relevant records upon determining a threat of litigation and since it is very difficult to actually delete information from a computer due to the manner in which computers delete files, this information should still exist, especially where, as here, a lawyer (General Counsel Paul Schroeder) is involved.

43.    Accordingly, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to immediately produce the responsive information.

## REQUEST FOR PRODUCTION NO. 43

43. Please produce a full and complete copy of the lawsuit, claim and security file lists maintained by Debbie Dynek and identified by Debbie Dynek in her May 28, 2003 *Frazier, et. al. v. Dillard's Inc., et al.,* deposition.

> RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence. Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

44. Regarding Request for Production 43: Debbie Dynek is a witness designated in this case. As noted above, Debbie Dynek is employed in the legal department at Dillard's headquarters in Little Rock, Arkansas.

45. During her employment at Dillard's Ms. Dynek kept a list of cases on which she was working. (See Exhibit 8, p. 89, Deposition of Debbie Dynek). The list dates back to 2001. (*Id.*). She keeps it on her computer and all she has to do is print it out. (*Id.*). The list indicates store number, date of incident, self-insured or insured, case name, state or federal court, description of the incident and identity of outside counsel. (*Id.* at pp. 89-90). She identified causes of action, including false arrest, false imprisonment and civil rights allegations, and obtained some information about the cases from discovery responses, depositions and some times outside counsel. (*Id.* at pp. 92-94). She collected the information on her own, and no one instructed her to collect the information. (*Id.* at p. 95). Her list pertains to cases involving wrongful accusations of shoplifting, slip and falls and property destruction. (*Id.* at p. 101). Outside counsel in this case did not instruct Ms. Dynek to keep this list. (*Id.* at pp. 110-111). Again, the list is something she did herself, without instruction from anyone, for her own personal use. (*Id.*).

Plaintiffs voluntarily limit their request to the information on the list pertaining to:

*False arrest, false imprisonment and civil rights cases recorded on Ms. Dynek's list.*

46.    The information does not enjoy privilege in light of Ms. Dynek's testimony, and the data recorded is reasonably calculated to lead to the discovery of additional potential witnesses experiencing incidents similar to your Plaintiffs', or accusing Defendant of discrimination and racial profiling. Further, the type of information in question can show notice and can be germane to Plaintiffs' punitive damage claim, as well as record retention and destruction.

47.    Accordingly, Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to produce the responsive information immediately.

## REQUEST FOR PRODUCTION NO. 49

49. Please produce full and complete copies of all correspondence, documented complaints, **e-mails,** notes and/or memoranda Defendant has received from any employee of any Defendant pertaining to:

a)    Requests and/or inquires concerning in-store video surveillance cameras;

b)    Requests and/or inquires concerning purchase, use and/or activation of "No-Go" or electronic merchandise tags;

c)    Requests and/or inquiries concerning purchase, use and/or placement of theft deterrent placards or posters warning customers of consequences of theft, presence of security and/or use of in-store video surveillance cameras;

d)    Requests and/or inquiries concerning security policy and procedure training;

e)    Requests and/or inquiries concerning security policies and procedures;

f)    Requests and/or inquires concerning supervision of security officers, and,

g)    Requests and/or inquiries concerning store manager training for supervising security officers.

RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence. Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

48.     Regarding Request No. 49: Training of store personnel, including managers, sales associates and security, is relevant to allegations made by your Plaintiffs.  In addition, whether Dillard's provided or used equipment that could reduce the risk of misidentifying shoplifters or profiling customers is relevant to the issue of Dillard's operating its stores within standards expected in the industry.

49.     Your Plaintiffs are asking simply that Dillard's produce requests and inquiries made by its own employees concerning matters directly at issue in this case.

50.     An internal company computer print-out dated July 8, 1990 concerning "Security Policy" sets forth the following:

> Dillard's Security Officers represent one of our most visible and highly controllable inventory protection assets.  Your primary focus must be on protecting our inventory in high theft areas...In order to insure that our security force is protecting our high theft areas the following policy is being implemented.

(See Exhibit 10, Security Policy Print-Out).  The rest of the document found by Plaintiffs is mostly illegible and no better copy has been provided.

51.     However, an internal memorandum dated January 8, 1990 from former General Counsel, James Darr, to Division Chairmen, Division Presidents and Directors of Stores concerning "Procedures Regarding Shoplifting Suspects/Off-Duty Police Officers" states the following:

> False arrest, malicious prosecution and assault litigation plague retailers in America today.  Dillard's is no exception.  In order to keep this costly litigation to a minimum, we have developed the attached standards to be signed by new, as well as existing, security personnel.
>
> It is important that all security personnel be informed at the time of hire of Dillard's rules and procedures relative to shoplifting suspects.  Again, these rules apply to all security personnel.  Store management is responsible for hiring and must check references of all security personnel considered for hire.  Further, please be advised that only off-duty officers from the police or sheriff are to be utilized as security

-17-

personnel, unless prohibited by law.  In such cases, use of other than officers must
be approved by the corporate office.

Please promptly forward these rules to your stores for immediate implementation.

(See Exhibit 11, James Darr Memo) (emphasis in original).

52.    In September 1992, James Darr forwarded to all Directors and copied Nanette Savage,

as well as Division Management, an e-mail regarding "Security Employee Guidelines," that

admonished as follows:

> Recently, we have experienced several security stops that are not in compliance with
> our security guidelines.   Accordingly, I can only conclude that some security
> employees have either forgotten the guidelines or never read them in the first place.
> As a result please have all security employees read, or re-read, the security guidelines
> and sign them or re-sign them, with the appropriate date.
>
> This is one item of overhead which we should be able to control.

(See Exhibit 12, James Darr Security Memo).

53.    During 1992, Billy Mitchell, a 17-year-old African American minor, was detained,

handcuffed, and escorted to a security office at an Arizona Dillard's by an off-duty officer working

security for Dillard's.  In his subsequent lawsuit, Mitchell sued for false imprisonment and civil

rights violations.  The jury returned a verdict in favor of Mitchell for $27,000 in compensatory

damages, $430,000 in punitive damage and $155,237 in attorney fees pursuant to his civil rights

claims. See, *Mitchell v. Dillard Department Stores, Inc.*, 197 Ariz. 209, 3 P.3d 1129 (Az.Ct.App.

2000).

54.    On June 1, 1994, Darryl Robinson, a black male, was killed at a Houston, Texas

Dillard's as a result of an incident involving store employees, including off-duty officers working

as store security. See, *C.L. Bridges v. Denise R. Robinson*, 20 S.W.3d 104 (Tex. App. – Houston

[14th Dist.] 2000).  At least six other Dillard's customers (only one of which is anglo), have been killed in incidents involving Dillard's store security between 1994 and 2003.

55.     On April 5, 1996, Paula Hampton, an African American female, was accused of shoplifting and was detained in front of her minor daughters by an off-duty officer working security and [was] refused service at an Overland Park, Kansas Dillard's.  As a result of her incident, Ms. Hampton brought suit alleging civil rights violations.  A jury returned a verdict in favor of Ms. Hampton for $56,000 in compensatory damages and $1.1 million in punitive damages.  See, *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2002).  In that case, the jury heard indirect circumstantial evidence, including testimony and incident reports, that blacks were "tracked," singled out as suspicious and differentiated predominantly by race in reports.  The United States Supreme Court refused to hear the case, leaving the judgment undisturbed.

56.     On January 20, 2000, Assistant City Attorney for the City of Tampa, Kirby Rainsberger, informed Melveen Malone, an African–American Dillard's victim, that Tampa officers would no longer be allowed to work at Dillard's because of the City of Tampa's concern that "Dillard's may be profiling African-Americans." (See, Exhibit 16, City of Tampa Letter).  For his own part, Overland Park Police Chief John Douglass prohibited his officers from working at Dillard's because of allegations of racial profiling.  (See, Exhibit 15, News Article, p. 6).

57.     Lawsuits, including false imprisonment and civil rights claims are listed on the list created by Dillard's legal department employee Debbie Dynek (as discussed above).  The list dates back to 2001.

58.     In 1998 and again in 2000, current General Counsel and Corporate Representative, Paul Schroeder, sent out written directives nationwide instructing stores to send to Little Rock (his

office) all of their security files.

59.     On February 5, 2001, Paul Schroeder faxed to Adam Fifefield at *Good Housekeeping* a "Dillard's Fact Sheet" discussing security issues at the multi-billion dollar company, stating, in part, that "Dillard's continuously monitors and reviews its policies and procedures." (See Exhibit 13, Paul Schroeder Fax to Adam Fifefield at *Good Housekeeping*).

60.     On March 31, 2001, Bishop Clarence Carr wrote to Dillard's on behalf of more than 12 million members of Methodist denominations, expressing concern about racial discrimination at Dillard's and requesting to be informed of corrective action. (See, Exhibit 14, Bishop Carr Article & Letter). During that same year, Eddie Bauer, a major retailer, stated it would not use police officers to work retail security since they operate under a different set of standards than a retailer (See, Exhibit 15, News Article).

61.     Given Dillard's industry unique use of off-duty law enforcement officers as store security, the company's own early admission that personnel did not follow the company's (inadequate) security policies, the long term, continued occurrence of significant customer discrimination litigation, the attempt to gather up and destroy records Dillard's admits could show targeting, the company's long-term awareness of security policy problems, the company's strict compliance to put untrained managers in charge of security personnel, the company's lack of an experienced, trained and certified loss prevention or security department and director, and the documents found by your Plaintiffs, the information requested bears directly upon concerns, and inquiries, if any, articulated by company employees about Dillard's corporate mandated security practices or efforts.

62.     As such, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to immediately produce all responsive information.

## REQUEST FOR PRODUCTION NO. 50

50.  Please produce full and complete copies of all correspondence, documented complaints, notes, **e-mails** and/or memoranda Defendant has received **from any employee** of any Defendant in this lawsuit pertaining to mistreatment, physical abuse, emotional abuse, detention, arrest, prosecution, assault, battery and/or death of store customers and/or people at any Defendant's business premises.

> RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence. Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

63.     Regarding Request for Production 50: Employee concerns or complaints about the issues and allegations made the basis of this lawsuit, including disparate treatment of minority customers, constitute information reasonably calculated to lead to the discovery of admissible evidence.

64.     Plaintiffs incorporate by this reference, the argument and information set forth above, and urge the Court to order production of all responsive information. In this regard, your Plaintiffs voluntarily limit the scope of their request to information pertaining to the mistreatment, abuse, detention and arrest of minority customers and people of color. Dillard's security program is uniform and nationwide. The same problems and issues appear at different stores as a result of this nationwide, uniform program.

65.     Accordingly, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to immediately produce all responsive information in accordance with Plaintiffs' voluntary limitation.

### REQUEST FOR PRODUCTION NO. 51

51.   Please produce full and complete copies of all correspondence, notes, **e-mails** and/or memoranda Defendant has authored, received and/or reviewed concerning employment of off-duty law enforcement officers as a way to limit and/or avoid liability or responsibility for incidents involving store patrons and/or employees.

> RESPONSE:   Defendant objects to this request for production as it is overly broad, irrelevant based on the facts, of this case, vexatious, harassing, and not calculated to lead to admissible evidence.   Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

66.   Regarding Request 51:   Defendant rely upon the status of their off-duty law enforcement officers employed as store security as a defense to liability in civil actions such as the instant case.   In short, Dillard's uses off-duty law enforcement officers as a liability shield.

67.   Charles Conley, Former Chief of Security for the Higbee Company (1962-1991), a retail business acquired by Dillard's, Inc., reported directly to Roy Grimes, a Dillard's executive, and Roy Grimes told Charles that his job position was eliminated because Dillard's, Inc. believed that using "off-duty" police officers could insulate Dillard's, Inc. from civil liability.   (See, Exhibit 17, Charles Conley Affidavit).   After adopting this national policy, the home office in Little Rock, Arkansas decided it was not necessary to operate an extensive training program for security personnel.   (See, Exhibit 18, pp. 48-50, James Goss Deposition).

68.   As discussed more fully above, Plaintiffs themselves located a few documents indicating that as early as September 1992, the company experienced problems with security stops (See, Exhibit 12, James Darr Security Memo).   Significant customer discrimination verdicts against the company occurred during the 1990s.   At least one police department decided in 2000 not to allow its officers to work at Dillard's as a result of concerns that Dillard's profiled African-Americans. (See, Exhibit 16, City of Tampa Letter).

69.     During 2000, Alex Dillard, the President of Dillard's, chaired a meeting in Little Rock, Arkansas where "all kinds of security issues" were discussed. (See, Exhibit 19, pp. 90-95, Gaston Lemoine Deposition).  Scant paperwork or documents regarding that meeting have been produced in the Dillard's litigation.

On October 4, 2003, the Texas NAACP resolved as follows:

Be it resolved that the Texas State Conference of NAACP branches condemn the practice of private companies using "sovereign immunity" and immunities granted to sworn peace officers as a protective shield by retailers such as Dillard's to avoid prosecution and liability for acts of racial profiling against African-Americans in Texas, if security is performed by law enforcement officers.

(See, Exhibit 20, Texas NAACP Resolution).

70.     This is what Dillard's does though, and that is what Dillard's will do in this case. Consequently, Defendant's decision to use off-duty law enforcement as a liability shield in civil cases resonates as an important issue where your Plaintiffs were subjected to a bad stop.

71.     As such, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to respond immediately without objection.

**REQUEST FOR PRODUCTION NO. 56**

56. Please produce full and complete copies of all correspondence, notes, **e-mails,** studies, surveys, publications and/or memoranda pertaining to and/or discussing use, non-use, continued use, misuse of off-duty law enforcement personnel as store security authored, received and/or reviewed by:

a.
b.     Alex Dillard;
c.     Michael Dillard;
d.
e.     James I. Freeman;
f.     Paul Schroeder;
g.     Dean Worley;

h.
i.
j.
k.
l.
m.
n.
o.
p.      Sidney Sanders;
q.      Jody Styles;
r.
s.
t.

RESPONSE:  Defendant objects to this request for production as it is overly broad, irrelevant based on the facts, of this case, vexatious, harassing, and not calculated to lead to admissible evidence.  Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

72.     Regarding Request 56: Each of the people identified in this request for production are employed by Dillard's and each person holds (or held) executive level positions at the company. (See, Exhibit 21, Dillard's, Inc. 2001 Annual Report).

73.     Alex Dillard, a lawyer, chaired security meetings, reviews store security budgets (with James Freeman) and appeared in a security video.  Michael Dillard is president of the Little Rock Division.  Jody Styles headed Risk Management at the time of Stephanie's incident, and Sidney Sanders appears in security videos and put together a camera program.  Paul Schroeder has been discussed at length in this motion.  Dean Worley works in Paul Schroeder's company legal department.

74.     Since Dillard's does not have a head of security or director of security , the company relies on its legal department (Paul Schroeder), division managers, store managers and operations managers to oversee its security force.  Consequently, your Plaintiffs must point

directly to these people to obtain information responsive and relevant to this request.

75.    That discussion or dialogue on the specific issue inquired about in this document request actually occurred is evidenced in the information found by your Plaintiffs, including Jim Darr's e-mails, Paul Schroeder's memoranda and Paul Schroeder's "Dillard's Fact Sheet," as well as testimony offered on the subject of Alex Dillard's security-related Little Rock, Arkansas meeting in 2000.

76.    Where as here, executive level personnel take responsibility for security related issues and the company uses its officers as a liability shield, the information requested should be produced without objection. If there is no responsive information, then Defendant should so state without objection. Otherwise, we are left to wonder what is hidden behind the objections lodged by Defendant.

77.    Accordingly, Plaintiffs respectfully move this Honorable Court to overrule Defendant's objections and enter an order compelling Defendant to respond immediately without objection.

## INTERROGATORY NOS. 18-19

18. As to Plaintiff, please state the full name, job title, current employment status and last known address and telephone number of each employee of Defendant working during the time of the incident made the basis of this lawsuit, including in your response a brief statement of what, if any, knowledge the person(s) identified have concerning the incident complained of by Plaintiff.

> ANSWER: Defendant objects to this interrogatory as being overly broad, irrelevant based on the facts of this case, and not calculated to lead to admissible evidence.

19. Please state the full name, job title, employment location with Defendant, current employment status and last known address of each supervisor and management level employee charged with supervision of the employee(s) listed by you in response to Interrogatory No. 18.

ANSWER: Defendant objects to this interrogatory as being overly broad, irrelevant based on the facts of this case, and not calculated to lead to admissible evidence.

78.     Regarding Interrogatories 18-19:  Defendant provided no responsive information as to either of these interrogatories, even though the interrogatories are limited to the date in question (February 12, 1999) and the people working at the Park Plaza Dillard's during the time of Stephanie Crutchfield's incident.  Each of these people may have knowledge of relevant facts.  Accordingly, Plaintiffs respectfully request that this Honorable Court, overrule Defendant's objections and order Defendant to respond fully and completely without objections.

## INTERROGATORY NO. 34

34.  Has Defendant ever maintained any records identifying the likely potential clothing, conduct, ethnicity and/or appearance of potential shoplifters and/or customers?  If your answer is yes, please describe briefly the title of these documents as well as the nature of these documents and identify by name, address and telephone number the custodian of these records.

> ANSWER: Defendant objects to this interrogatory as being overly broad, irrelevant under the facts of this case, and not calculated to lead to admissible evidence.  Plaintiff is engaged in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

79.     Regarding Interrogatory 34: As with Request for Production No. 34, discussed at length above, Defendant failed to provide any responsive information pertaining to records which would show who at the company has information detailing or describing the ethnicity of Dillard's customers and store visitors.

80.     Again, Paul Schroeder had this information for his "Dillard's Fact Sheet," so Dillard's can access this type of information and Plaintiffs need this information to demonstrate disparate treatment of minorities.  Plaintiffs are simply asking for the identity of the person at Dillard's with whom Plaintiffs can speak by deposition in order to get this needed statistical data.

81.     Accordingly, your Plaintiffs respectfully request that this Honorable Court overrule

Defendant's objections and order Defendant to respond without objection.

### INTERROGATORY NO. 35

35. Please identify by full name, job position held, years of employment and address, Defendants' person most knowledgeable concerning the subject matter and/or areas of testimony identified below:

a.     Defendant's policies and procedures pertaining to detecting, investigating, questioning, apprehending, photographing, arresting and prosecuting any suspected shoplifters and/or store customers;

b.     Complaints and/or lawsuits pertaining to allegations of false imprisonment, wrongful detention, assault and battery, wrongful death, malicious prosecution, defamation, libel, slander, and/or constitutional violations;

c.     Policies and procedures for identifying by code name or code number suspected shoplifters, trespassers and/or suspicious persons;

d.     Policies and procedures for documenting and/or recording incidents at Dillard stores involving non-arrest activity, suspicious activity, criminal activity, theft, trespassing and/or suspected shoplifting;

e.     Policies and procedures for transmitting by electronic mail to headquarter offices, General Counsel and/or risk management in Little Rock, Arkansas information concerning non-arrest activity, suspicious activity, criminal activity, theft, trespassing and/or suspected shoplifting occurring at Defendants' stores and/or business premises;

f.     Polices and procedures for training and supervising vice presidents, district managers, store managers, operation's managers, merchandising managers, assistant managers, area sales managers, sales associates and security personnel regarding detection, investigation, interrogation, detention, apprehension, photographing, arrest, banning, trespassing and prosecution of people suspected of illegal activity, including internal and external theft;

g.     Policies and procedures for suing or threatening to sue accused or suspected shoplifters  for theft pursuant to any state statutes, criminal codes or municipal ordinances, including the amount of money Defendants have received pursuing said lawsuits and/or threatened lawsuits;

h.     Policies, procedures and/or programs for rewarding management level employees,
       sales associates and/or security personnel with bonuses, gift coupons, gift cards, store
       merchandise, cash, pay raises, paid time off and/or favorable work schedules as a
       result of identifying, detecting, apprehending, arrest and/or prosecution of persons
       suspected of internal or external theft;

i.     Policies and procedures for rewarding stores for decreased shrinkage, including
       internal and external theft, and/or penalizing store management and/or employees for
       failing to decrease or control internal and external theft;

j.     Meetings pertaining to use, non-use and/or misuse of store security personnel;

k.     Basis for and discussions pertaining to any decision to employ and/or discontinue use
       of off-duty law enforcement personnel as security officers for Defendants' stores;

l.     Studies, surveys publications and/or memoranda received, reviewed, subsidized,
       authored and/or conducted by Defendants identifying, outlining and/or discussing the
       likely, potential and/or actual profile, including clothing, dress, hair style, physical
       appearance, age, mannerisms, conduct and/or ethnicity, of shoplifters, criminals,
       thieves, patrons and/or customers;

m.     Audit reports, audit logs, studies, surveys, electronic mail transmissions,
       correspondence, memoranda, and/or written instructions pertaining to record keeping,
       record retention, record destruction and/or record storage policies and procedures;

n.     Audit reports, audit logs, studies, surveys, electronic mail transmissions,
       correspondence, memoranda and/or written instructions pertaining to the use,
       maintaining, storage, gathering and/or destruction of security notebooks, security
       logs, security officer notes, daily activity reports, loss prevention reports, security
       files, banning notices, trespass warnings, customer photographs, non-arrest activity
       narratives, pass-on books and/or officer notebooks;

o.     Any and all insurance policies and/or reservation of rights letters that may apply to
       the incidents made the basis of this lawsuit; and,

p.     Invoices, receipts, reimbursement requests, trip reports, correspondence, memoranda,
       e-mail transmissions, and/or studies pertaining to any Dillard Store visits made by
       employees, directors, officers and/or managers of W.D. Company; The Higbee
       Company d/b/a Dillard's; Dillard's Store Services, Inc.; William Dillard, II; Alex
       Dillard; Michael Dillard; Drue Corbusier and/or William Dillard, Sr.

ANSWER: Defendant objects to this interrogatory as being overly broad, irrelevant under
the facts of this case, and not calculated to lead to admissible evidence. Plaintiff is engaged

in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

82.     Regarding Interrogatory 35: Plaintiffs request here that Dillard's identify for Plaintiffs the company's person most knowledgeable on specific categories of testimony addressing issues pertinent to the instant case.  Defendant objected and provided no responsive information as to an interrogatory inquiring about discoverable information.

83.     As such, your Plaintiffs respectfully request that this Honorable Court overrule Defendant's objections and order Defendant to respond fully and completely without objection.

## F.

## EXHIBITS LIST

| | |
|---|---|
| Exhibit 1 | *Hampton v. Dillard's Dept. Stores*, 247 F.3d 1091 (10th Cir. 2002) |
| Exhibit 2 | List of Dillard's Related News Articles |
| Exhibit 3 | Paul Schroeder's Internal Memo, March 31, 1998 |
| Exhibit 4 | Paul Schroeder's Internal Memo, May 1, 2000 |
| Exhibit 5 | Excerpts from Paul Schroeder's Deposition, January 14, 2003 (pp. 176, 180) |
| Exhibit 6 | Audit Report 907, July 14, 2001 |
| Exhibit 7 | Court Order (Beaumont, Texas), December 10, 2002 |
| Exhibit 8 | Excerpts from Debbie Dynek's Deposition, May 28, 2003 (pp. 68-70; 89-111) |
| Exhibit 9 | Excerpts from Tim Knight's Deposition, January 15, 2004 (pp. 21-27) |
| Exhibit 10 | Dillard's "Security Policy" Print-out, July 8, 1990 |
| Exhibit 11 | James Darr's Internal Memo, January 8, 1990 |
| Exhibit 12 | James Darr's "Security Employee Guidelines" E-mail September 1992 |
| Exhibit 13 | Paul Schroeder's "Dillard's Fact Sheet" Fax to Adam Fifefield, *Good Housekeeping*, February 5, 2001 |
| Exhibit 14 | Bishop Clarence Carr's Correspondence to Dillard's, March 31, 2001 |
| Exhibit 15 | Eiserer, Tanya.  "Retailers Face Criticism Over Use of Off-Duty Police Officers for Security," Fort Worth Star-Telegram, October 28, 2001 |
| Exhibit 16 | City of Tampa, City Attorney Kirby Rainsberger, Correspondence to Dillard's Victim Melveen Malone, January 20, 2000 |
| Exhibit 17 | Charles Conley's Affidavit |
| Exhibit 18 | Excerpts of James Goss' Deposition, September 6, 1994 |
| Exhibit 19 | Excerpts of Gaston Lamoine's Deposition, April 22, 2003 |
| Exhibit 20 | Texas NAACP Resolution |
| Exhibit 21 | Dillard's Inc. 2001 Annual Report |

Exhibit 22    Excerpts from Paul Schroeder's Deposition, January 28, 2004 (pp. 7-9)
Exhibit 23    Deposition of John Garza, June 1, 2000, pp. 23-25, 33-35, 41
Exhibit 24    Deposition of Tom Osborn, June 1, 2000, pp. 38-47, 62-64, 79

Exhibit 25    Deposition of Stacey Payton, June 1, 2000, p. 49

### G.

### CONCLUSION

84.     Defendant failed to fully and completely respond without objection to the above

discovery requests.  Attempts to resolve Plaintiffs' discovery production concerns were not fruitful.

(See, Exhibit 24, Letter to Marie B. Miller, defense counsel).  Your Plaintiffs ask that the Court grant

Plaintiffs' Motion to Compel and order Defendant to properly and fully respond to the discovery

requests without objection.

### H.

### PRAYER

85.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Motion to

Compel be set for hearing, and that upon final hearing of same this Honorable Court enter its Order

granting Plaintiffs' Motion to Compel, and for such other and further relief, at law or in equity, to

which Plaintiffs may show themselves to be justly entitled.

                            Respectfully submitted,


                            Richard L. Mays #68036
                            Arkie Byrd #80020
                            MAYS, BYRD & ASSOCIATES, P.A.
                            415 Main Street
                            Little Rock, AR 72201
                            (501) 372-6303

AND

Cletus P. Ernster, III
CLETUS P. ERNSTER III, P.A.
440 Louisiana, Suite 1930
Houston, TX 77002
(713) 821-9433


AND

Dennis C. Sweet, III
SWEET & FREESE
200 South Lamar Street, Suite 410
North Tower
Jackson, MS 39201
(601) 964-8700

BY: _____
ARKIE BYRD   #80020

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

Plaintiffs have made reasonable efforts to resolve the disputes which are the subject of this motion without the necessity of Court intervention and the efforts have failed.

_____
ARKIE BYRD

## CERTIFICATE OF SERVICE

I, ARKIE BYRD, hereby certify that a true copy of the foregoing document has been **mailed, postage prepaid** to Ms. Marie B. Miller, Attorney at Law, 425 W. Capitol Ave., Suite 3801, Little Rock, Arkansas 72201 on this _____ day January, 2005.

_____
ARKIE BYRD

F:\Donna Johnson\Arkie Byrd\Dillards\Crutchfield\MotiontoCompel.wpd; January 14, 2005 (3:09pm)

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached to Original Document in Courts's Case File*