IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEPHANIE BROCKMAN CRUTCHFIELD

V.                                                        NO. 4:02cv0074

DILLARD'S, INC.

---

PLAINTIFFS' FIRST SUPPLEMENTAL MOTION TO COMPEL
AND REQUEST FOR SANCTIONS

---

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, STEPHANIE BROCKMAN CRUTCHFIELD, Plaintiff in the above-numbered

and entitled cause, and file this First Supplemental Motion to Compel and Request for Sanctions more

complete Discovery Responses from Defendant DILLARD'S, INC., and would respectfully show this

Honorable Court as follows:

**A.**
**BACKGROUND**

1.      In this civil rights action, your Plaintiffs seek redress for unlawful race discrimination and

common law violations that occurred at Dillard's as a result of nationwide, race discrimination and racial

profiling by Dillard's.

2.      On January 28, 2005, the Court granted Plaintiff's Motion to Compel. In this regard, the Motion was granted as to Requests for Production made the basis of the Motion, including Request for Production Nos. 18, 19 and 43.

3.      Defendant filed a Motion for Protection on June 2, 2005, amending its request on June 17, 2005. A protective order was entered by the parties in August, 2005.

4.      As explained in pleadings before the Court, your Plaintiff is alleging a pattern and practice of discrimination and must have Dillard's internal security files to prove her discrimination case and support her claim for punitive damages.

5.      However, Defendant unilaterally limited its document production and discovery responses to the store in question for the years 1996-1999.

6.      As such, Plaintiff is back before the Court having exhausted her efforts to resolve important discovery issues without necessity of Court intervention and assistance.

7.      Your Plaintiff is attaching here as Exhibits discovery previously referenced in the original Motion to Compel already granted by the Court to the extent new exhibits are referenced here, your Plaintiff has numbered those exhibits beginning with the Exhibit No. 27, which is the next exhibit after the last numbered exhibit in the original Motion to Compel.

**B.**
**SUMMARY OF REQUESTED RELIEF**

8.      Plaintiff respectfully requests that the Court order the following relief:

(a)      Order Defendant to immediately produce all documents and electronically stored data responsive to Request Nos. 18 and 19 for the years 1996-Present at all Arkansas stores and bring the originals to trial;

    (b)    Order Defendants to produce all responsive information to Request No. 43; and

    (c)    Order Defendants to pay all costs and attorneys fees associated with the filing of this Motion along with any copy and imaging associated with copying and imaging costs of all documents and photographs responsive to Request Nos. 18 and 19.

## C.
## Document Requests

9.    After the Court granted Plaintiff's Motion to Compel on January 28,

2005 and a protective order was granted and entered, Plaintiff wrote to defense counsel on October 11,

2005, October 14, 2005, October 26, 2005 and January 16, 2006 inquiring about further document

production. (See, Exs. 1-4, Correspondence dated October 11, 2005, October 14, 2005, October 26,

2005 and January 16, 2006). Defendant decided it would not produce any additional discovery, limiting

unilaterally its discovery responses to the store in question for the years 1996-1999.

10.    Allegations include claims for punitive damages and race

discrimination as a result of a nationwide pattern and practice of racial profiling at Dillard's. In addition,

Defendant asserts that it is not responsible for the misconduct of its security officers since they are off-duty

law enforcement officers.

11.    Turning first to Defendant's "security files," Defendant produced

only "security files" for the store in question during the years 1996-1999.

## REQUESTS FOR PRODUCTION NOS. 18-19

18. For the years 1990 - present, please produce full and complete copies of pass-on logs, security logs, security files, non-arrest records, incident reports, loss prevention reports, officer notebooks, pass-on books, daily activity reports, witness narratives, banning notices, trespass warnings, customer photographs, post orders and special orders for each Dillard location where each Plaintiff alleges his/her incident occurred.

RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

19. For the years 1990 - present, please produce full and complete copies of pass-on logs, security logs, security files, non-arrest records, incident reports, loss prevention reports, officer notebooks, pass-on books, daily activity reports, witness narratives, banning notices, trespass warnings, customer photographs, post orders and special orders  for each Dillard's store nationwide.

RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible evidence, Plaintiff is engaging in a fishing expedition for the purpose of attempting to create a cause of action where none exists.

12.    Regarding Requests Nos. 18 and 19:   National race-based mistreatment of Dillard's customers, including your Plaintiffs, is a central allegation in this case. In order for Plaintiffs to prove that race was a motivating factor, constituted an unreasonable basis for detention and to support a punitive damage claim, as well as a corporate pattern and practice of treating blacks differently than whites, your Plaintiffs must have the discovery responsive to these two (2) document requests, including the security files Defendant already produced in the *Frazier* case noted above.

13.    According to Debbie Dynek, a Dillard's employee in the company's legal department who was involved in gathering the security files, these files are **Dillard's business records** and the security files contain pass-on logs, officer notebooks, incident reports, loss prevention reports, daily activity reports, banning notices, trespass warnings, customer photographs and non-arrest record books. (See Exhibit 30, pp. 68-70, Deposition of Debbie Dynek).

14.    The **documents requested identify victims by race**, chronicling Dillard's security practices in detail. Indeed, Dillard's own internal records are evidence of disparate treatment for non-

whites that support allegations of racial profiling, racial discrimination and violations of Shopkeeper Privileges.

15.     According to deposition testimony from two (2) officers designated by Dillard's in this case, Dillard's security guard Tom Osborn kept lists (statistics) on paper and in a Dillard's Microsoft Excel Program identifying the race and gender of store visitors involved in incidents and arrests at Dillard's. (See, Exhibit 23, Deposition of John Garza, pp. 23-25, 34; Exhibit 24, Deposition of Tom Osborn, pp. 38-41). Tom Osborn provided a disc of this information to Dillard's security officer, Deputy Randall Tomboli. (See, Exhibit 24, Deposition of Tom Osborn, pp. 43-47). These statistics are similar to lists kept by Dillard's security at McCain Mall. (*Id.*, p. 41). In addition, officer Osborn put together himself albums of photographs pertaining to Dillard's store visitors. (*Id.*, Pp. 62-64). The information was prepared "on Dillard's dollars," Dillard's is aware of the information and "Dillard's can look at it if they want." (See, Exhibit 23, Deposition of John Garza, pp. 23, 35).

16.     Importantly, both officer Osborn and Officer Payton agree that more blacks than whites get arrested at Dillard's. (See, Exhibit 33, Deposition of Tom Osborn, p. 49; Exhibit 34, Deposition of Stacey Payton, p. 49). This eyewitness conclusion is supported by Dillard's own internal security records which show that over 80% of the store customers at the Park Plaza Dillard's identified in security incident reports are African-American. (See, Exhibit 35, Affidavit of Dr. Jerome Williams, pp. 17-18).

17.     Internal Dillard's memoranda dated March 31, 1998 and May 1, 2000 authored by Dillard's Corporate Representative and General Counsel, Paul Schroeder, detail the company's admission regarding these records, stating, in part, as follows:

   ***Such reports could be interpreted by some shoppers as attempts to "target" them.***

(See Exhibit 27, p. 2, paragraph 4, Schroeder Memo; Exhibit 4, p. 1, paragraph 1, Schroeder Memo). As Paul Schroeder testified, targeting means "identifying a person based on their race." (See Exhibit 28, p. 176, Paul Schroeder Deposition). According to Paul Schroeder, he issued the memoranda because of his concern that Dillard's personnel were describing people in a way that customers could feel they were in fact being targeted. (*Id.*).

18.     Consequently, General Counsel drafted the memoranda intending to gather all of these security records at one central location—namely, his Little Rock, Arkansas office. (See Exhibit 28, p. 180, Deposition of Paul Schroeder). To be clear, the memos outlined as follows:

> Corporate Legal needs to become the official repository of all incident reports, log books (or whatever they may be called) which are currently on file in the stores. The stores should send to Nanette Savage <u>ALL</u> originals and <u>ALL</u> copies they may have. The stores should not retain any old incident reports or log books on premises.

(See Exhibit 27, p. 2, paragraph (c)(1), Schroeder Memo; Exhibit 4, p. 2, paragraph 4, Schroeder Memo).

19.     An e-mail transmission dated July 14, 2001 concerning an internal record audit elaborated, stating as follows:

> All unauthorized forms or notebooks containing narrative information of non-arrest activity *must be destroyed.*

(See Exhibit 29, Audit Report 907). The following information contained in the report again highlights the company's fears about their own documents:

> During an inspection of the store, the Operations Manager and I found a notebook in the security office which contained unauthorized records of non-arrest activity. This notebook's entries, which began on 1/20/01, included numerous descriptions of suspicious shoppers. Many of these narratives offered lengthy descriptions of the activity witnessed and the individuals sex and race.

(*Id.*).

20.     A store manager for the Tyler Dillard's, Tim Knight, recalls attending semi-annual meetings in Phoenix and/or Fort Worth chaired by Gat Lemoine or Gene Baker where he was informed possibly by Paul Schroeder that stores were not to document ethnicity in the tracking of customers whether or not the customer was regarded as suspicious.   (See Exhibit 31, pp. 21-27, Tim Knight Deposition).

21.     Dillard's does not deny that the records requested were gathered together in one central location, and Dillard's cannot deny there is no burden in producing in this case that which has already been produced in another case. Security files for the Beaumont, Texas and Port Arthur, Texas Dillard's stores show that over 80% of security contacts with customers involve minorities, most of whom are African-American.

22.     By its own admission, Dillard's acknowledges in its memos that these security records may show targeting of customers. There is no burden in producing these documents again, and your Plaintiffs need these records in order to show that Defendant targeted your Plaintiffs. Further, the bases for interrogations, stops and detentions are germane to claims asserted by your Plaintiffs, in that Dillard's was obliged by law (The Shopkeeper's Privilege) to act in good faith and upon a reasonable suspicion when detaining customers like your Plaintiffs. Moreover, your Plaintiffs need the requested (previously produced) information to demonstrate that Dillard's pattern, practice, habit, motive and intent, as well as negligence in hiring, training, and supervising company personnel, created an atmosphere ripe for abuse and profiling of minorities. Last, Dillard's conduct as evidenced in these records supports Plaintiffs' punitive damage claims.

23.     Importantly, circumstantial evidence of racial profiling in the form of incident reports or security files were used at trial in the case, *Hampton v. Dillard's Department Stores, Inc.*, 247 F.3d

-7-

1091 (10th Cir. 2002), *cert. den'd*, that blacks were "tracked," singled out as suspicious and treated

differently than whites.

    24.       Accordingly, your Plaintiffs respectfully move this Honorable Court to overrule Defendant's

objections and enter an order compelling Defendant to immediately produce these records.

### REQUEST FOR PRODUCTION NO. 43

43. Please produce a full and complete copy of the lawsuit, claim and security file lists maintained by
Debbie Dynek and identified by Debbie Dynek in her May 28, 2003 *Frazier, et. al. v. Dillard's Inc., et
al.,* deposition.

> RESPONSE: Defendant objects to this request for production as it is overly broad, irrelevant
> based on the facts of this case, vexatious, harassing, and not calculated to lead to admissible
> evidence. Additionally, Plaintiff is engaging in a fishing expedition for the purpose of attempting to
> create a cause of action where none exists.

    25.       Regarding Request for Production 43: Debbie Dynek is a witness designated in this case.

As noted above, Debbie Dynek is employed in the legal department at Dillard's headquarters in Little

Rock, Arkansas.

    26.       During her employment at Dillard's Ms. Dynek kept a list of cases on which she was

working. (See Exhibit 30, p. 89, Deposition of Debbie Dynek). The list dates back to 2001. *(Id.)*. She

keeps it on her computer and all she has to do is print it out. *(Id.)*. The list indicates store number, date

of incident, self-insured or insured, case name, state or federal court, description of the incident and identity

of outside counsel. *(Id.* at pp. 89-90). She identified causes of action, including false arrest, false

imprisonment and civil rights allegations, and obtained some information about the cases from discovery

responses, depositions and some times outside counsel. *(Id.* at pp. 92-94). She collected the information

on her own, and no one instructed her to collect the information. *(Id.* at p. 95). Her list pertains to cases

involving wrongful accusations of shoplifting, slip and falls and property destruction. (*Id.* at p. 101).
Outside counsel in this case did not instruct Ms. Dynek to keep this list. (*Id.* at pp. 110-111). Again, the
list is something she did herself, without instruction from anyone, for her own personal use. (*Id.*).

Plaintiffs voluntarily limit their request to the information on the list pertaining to:

*False arrest, false imprisonment and civil rights cases recorded on Ms. Dynek's list.*

27.    The information does not enjoy privilege in light of Ms. Dynek's testimony, and the data
recorded is reasonably calculated to lead to the discovery of additional potential witnesses experiencing
incidents similar to your Plaintiffs', or accusing Defendant of discrimination and racial profiling. Further,
the type of information in question can show notice as well as ratification, and can be germane to Plaintiffs'
punitive damage claim, as well as record retention and destruction issues giving rise to a spoliation claim.

28.    Accordingly, Plaintiffs respectfully move this Honorable Court to overrule Defendant's
objections and enter an order compelling Defendant to produce the responsive information immediately.

### D.
### SANCTIONS

29.    Defendant resisted discovery production requested in this
Supplemental Motion even with the reasonable limitations offered by your Plaintiff, forcing Plaintiff to file
this Motion. Consequently, request is respectfully made that the Court order Defendant to pay all costs
and attorneys fees associated with the filing of this Motion along with all copy and imaging costs associated
with copying and imaging all documents and photographs with copying and imaging all documents
responsive to request Nos. 18 and 19 discussed above (and previously).

**E.**
## CONCLUSION

30.     Defendant failed to fully and completely respond without objection to the above discovery

requests. Attempts to resolve Plaintiffs' discovery production concerns were not fruitful. (See, Exhibit 4,

Letter to Marie B. Miller, defense counsel).  Your Plaintiffs ask that the Court grant Plaintiffs' First

Supplemental Motion to Compel, order Defendant to properly and fully respond to the discovery requests

without objection and award sanctions.

**F.**
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this First Supplemental Motion

to Compel be set for hearing, and that upon final hearing of same this Honorable Court enter its Order

granting Plaintiffs' Motion to Compel, and for such other and further relief, at law or in equity, to which

Plaintiffs may show themselves to be justly entitled.


Respectfully submitted,


**/s/ Richard L. Mays, /s/ Arkie Byrd**
Bar No. 68036; Bar No. 80020
Attorney for Plaintiff
MAYS, BYRD & ASSOCIATES, P.A.
415 Main Street
Little Rock, Arkansas 72201
(501) 372-6303 Telephone
(501) 399-9280 Facsimile
E-mail:maysr@aol.com; arkiebyrd2@aol.com

AND

/s/ **Cletus P. Ernster, III, P.C.;**
Bar Number 00793698
/s/ **Mickey L. Washington**
State Bar No. 24039233
440 Louisiana, Suite 1930
Houston, Texas 77002
(713) 821-9433 Telephone
(713) 821-9432 Facsimile
E-mail: cernster@cetexaslaw.com;
        mw@cetexaslaw.com

AND

/s/ **Dennis Sweet**
State Bar No. 8105
200 South Lamar Street, Suite 410
North Tower
Jackson, MS 39201
(601) 965-8700 Telephone
(601) 965-8719 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

**Arkie Byrd**
arkiebyrd2@aol.com djohnson@maysbyrdlaw.com

**James M. Simpson, Jr**
simpson@fec.net

I hereby certify that on April 7, 2006, I mailed the document and a copy of the Notice of Electronic Filing (NEF) by United States Postal Service to the following non CM/ECF participants:

**Derrick Mark Davidson**
Gill Elrod Ragon Owen & Sherman, P.A.
TCBY Tower 425 West Capitol Avenue Suite 3801
Little Rock, AR 72201-2413

-11-

**Cletus P. Ernster, III**
**Mickey L. Washington**
440 Louisiana, Suite 1930
Houston, Texas 77002

**Marie Bernarde Miller**
Gill Elrod Ragon Owen & Sherman, P.A.
TCBY Tower 425 West Capitol Avenue Suite 3801
Little Rock, AR 72201-2413

**Dennis C. Sweet, III**
Sweet & Freese, P.L.L.C.
City Centre N. Tower
200 South Lamar Street Suite 410
Jackson, MS 39207

**/s/ Richard L. Mays, /s/ Arkie Byrd**